The Honorable Rita Hale State Representative 123 Westport Point Hot Springs, AR 71913-7051
Dear Representative Hale:
This is in response to your request for an opinion on several questions in connection with the contemplated construction of a new municipal court facility for Hot Springs and Garland County. It is noted in correspondence attached to your request that a joint city-county committee has been studying this matter. The four specific questions that have been presented in this regard are as follows:
 1. Does [A.C.A. § 16-17-115] require both the city and county to pay a one-half (50%) share each of the cost to build a municipal court facility?
 2. Could either the city or county construct the facility on its own, and simply continue the cost sharing arrangement prescribed in A.C.A. § 16-17-115 for the operation of the court?
 3. The suggestion has been made that the county commit all or substantial portions of its Reserve Fund which currently stands at approximately $1.1 million to construct this facility and then charge the city lease payments for its half of the cost for the facility. Would this type plan be in conflict with any provisions of the Arkansas Constitution or laws enacted by the General Assembly?
 4. If an arrangement is valid whereby the county builds the facility and then charges the city lease payments for its portion of the construction costs, it has been suggested that the city's payments could be deducted from its portion of fines an fees collected in municipal court. Again, are you aware of any constitutional or statutory provisions that would prohibit this type of arrangement?
Question 1 — Does [A.C.A. § 16-17-115] require both the city and countyto pay a one-half (50%) share each of the cost to build a municipal courtfacility?
The answer to this question is clearly "no." This office has previously opined that § 16-17-115, which addresses the county's portion of municipal court expenses, does not require a county to pay any expenses other than one-half the salaries of the municipal judge and clerks. See Op. Att'y Gen. Nos. 93-001, 88-011, and 84-098.
It must be noted, however, when addressing this question with reference to the Hot Springs Municipal Court, that A.C.A. § 16-17-115 is not the governing provision. Reference must be made, instead, to A.C.A. §16-17-108 (Supp. 1997), in accordance with the introductory exception in § 16-17-115 wherein it provides "[e]xcept as authorized otherwise. . . ." Turning, then, to § 16-17-108, subsection (ww)(4) thereof provides in relevant part that:
 [t]he salaries of the municipal judges and the municipal court clerks and any special judges . . ., and the operating expenses of the Hot Springs Municipal Court, shall be paid fifty percent (50%) by the City of Hot Springs and fifty percent (50%) by Garland County. [Emphasis added].
In accordance with A.C.A. § 16-17-108(ww), therefore, the county and city are to contribute equally to the "operating expenses" of the Hot Springs Municipal Court. Construing this language under the well-established "plain meaning" rule of statutory interpretation (see generally Smith v.Smith, 41 Ark. App. 29, 848 S.W.2d 428 (1993)), I must conclude that new construction is not what the General Assembly envisioned when it mandated the cost sharing arrangement under § 16-17-108(ww). This follows from the ordinary meaning of "operating expenses" as "[t]hose expenses required to keep the business running . . . [;] [e]xpenses incurred in the course of ordinary activities of an entity." Black's Law Dictionary 984 (5th ed. 1979).
Thus, in response to your first question rephrased in the specific context of the Hot Springs Municipal Court, it is my opinion that §16-17-108(ww) does not require such payment because this provision does not purport to address the cost to build a municipal court facility.
Thus, in proceeding to address your remaining three questions, I must emphasize the fact that § 16-17-108(ww) will not, in my opinion, require either the county or the city to contribute to the cost of constructing a new municipal court facility. Nor has my research revealed any other statutory basis for the county or the city unilaterally imposing such cost on the other political subdivision. With this in mind, therefore, I will respond as fully as possible to the remaining questions.
Question 2 — Could either the city or county construct the facility onits own, and simply continue the cost sharing arrangement prescribed inA.C.A. § 16-17-115 [§ 16-17-108, see above] for the operation of thecourt?
It is my opinion that the answer to this question is in all likelihood "no," under the assumption that such a cost sharing arrangement "for the operation of the court" contemplates inclusion of the new facility related costs. Your question seems to assume that the facility would be constructed unilaterally by either the county or the city. While proceeding in this manner with construction may well be authorized, I must caution against relying upon § 16-17-108 (or § 16-17-115, as discussed above) for sharing operating costs of such a facility. That is, if the entity that constructs the facility expects contribution under §16-17-108 toward facility costs, I suggest that this arrangement be addressed prior to construction. As discussed above, § 16-17-108(ww) contemplates shared responsibility for the "operating expenses of the Hot Springs Municipal Court." If faced with the question, I believe a court would likely conclude that some agreement by the other political subdivision would be necessary in order to include new facility costs within these shared expenses.
Question 3 — The suggestion has been made that the county commit all orsubstantial portions of its Reserve Fund which currently stands atapproximately $1.1 million to construct this facility and then charge thecity lease payments for its half of the cost for the facility. Would thistype plan be in conflict with any provisions of the Arkansas Constitutionor laws enacted by the General Assembly?
Again, I have found no authority for the proposition that the city would be obligated, absent some agreement, for "half of the cost for the facility." With regard to the county's "Reserve Fund," I lack sufficient information to address the use of such revenues. This may require reference to documentation of the reserve, such as any resolution or trust agreement establishing the fund. See, e.g., A.C.A. §§ 14-73-102 and -103 (regarding local government reserve funds, generally). Local counsel should therefore be consulted in this regard.
Question 4 — If an arrangement is valid whereby the county builds thefacility and then charges the city lease payments for its portion of theconstruction costs, it has been suggested that the city's payments couldbe deducted from its portion of fines an fees collected in municipalcourt. Again, are you aware of any constitutional or statutory provisionsthat would prohibit this type of arrangement?
I am aware of no constitutional or statutory provision that would generally prohibit the city from agreeing to make such lease payments, although as stated above I do not believe the city would otherwise be obligated for the construction costs. I am uncertain, however, as to what is contemplated by the suggestion that the city's payments be "deducted" from fines and fees. Reference should be made to A.C.A. § 16-17-707 for guidance regarding the disbursement of, inter alia, fines and fees collected in municipal court.
Assistant Attorney General Elisabeth A. Walker prepared the following opinion, which I hereby approve.
Sincerely,
WINSTON BRYANT Attorney General
WB:EAW/cyh